The opinion of the court was delivered in November, 1800.
Kinsey, O. J.
(After stating the case.) — The question made in this case is, whether the plaintiffs can maintain an action on the award delivered to them? in other words, whether the mistake, by which the money was ordered to be paid to Court Voorhees and Sarah his wife, in the paper delivered to the defendant, so vitiates the whole proceedings of the arbitrators, as that no recovery can be had in this suit ?
According to the statement of the case, it appears perfectly clear, that had the mistake not been discovered and rectified, as .it was done, and had both the papers remained unaltered, and been so delivered to the parties, no doubt could reasonably have been entertained as to the real intention of the parties, without having recourse' to the parol evidence in explanation of the facts. If, however, the evidence be considered, no doubt can exist as to this being a mere mistake of the arbitrators, and nothing more.
Another observation may be made: had the- arbitrators subscribed no other paper than the one so altered and so published, or had they not delivered another paper variant from it, to the defendant, this action could clearly have been supported on the corrected paper, and the award would certainly have been held good. Because, however necessary it might be to notify the award made to the defendant, yet ai" *465 the submission did not prescribe any delivery to the parties, after notification ho was legally obliged to perform it, as fully as if the original award had been delivered to him. 1 Bac. Mr. 228; Hob. 51.
The ground of objection, however, to the obligatory force of the first paper seems to be, that both are equally entitled to be considered as the genuine award; that they are substantially different; that this variance creates an uncertainty, and that, therefore, neither is binding. Court Voorhees was no party to the submission, and Court Schenck cannot claim the benefit of an award made in favor of another person.
In the force of these objections, I cannot bring my mind, to acquiesce. The validity of awards depends, in general, 'upon their conforming to the terms of the submission, and a substantial variance will invalidate the award, either in toto or partially. The *terms of the submission may, however, be as various as the dispositions and pleasure of the parties. In the present case, the term3 prescribed are, that the arbitrators are to settle the differences between the parties, particularly those relating to the estates of John and Gertrude Voorhees, deceased, and that their award wrns to be final. That it was to be in writing, is rather inferrable from the word subscribe, than expressly stipulated; and that it was to be notified to the parties, seems to be implied in every case, before they can be liable for the penalty for non-performance. These alone are the terms which the parties themselves considered it necessary to prescribe, and it does not fall within the scope of our authority or inclination to annex any others, however reasonable and customary they may be. The question then is, whether an award has been made corresponding with the terms of the submission ? If so, the plaintiff must recover, otherwise the case is with the defendant.
In 1 Burr. 277, Hawkins v. Colclough, Lord Mansfield states the law, as it now stands, with regard to the construc *466 tion of awards. He protests “ against critical niceties in scanning awards made by judges of the parties’ own choosing, in order to the determination of the disputes between them.” He admits, however, that even under the more liberal doctrines of modern times “ they must have these two properties, to be certain and final.” The certainty required, however, may be judged of according to a common intent, and consistent with a fair and probable presumption.” This language is not quite so perspicuous as could be desired, but I take his meaning obviously to be, that which “ upon a fair and reasonable construction may be called certain, without recurring to possible facts which do not appear,” as is stated by Duller, in The King v. Lyme Regis, Doug. 158-9. That is, consider the instrument together, make no suppositions which do not appear, and endeavor to ascertain the probable meaning. If I am obscure I am so with great men, and upon a subject, the nature of which does not permit perfect clearness of language.
It is not denied that Court Voorhees and Sarah his wife are not parties to this submission ; and it is equally unquestionable, that Court Schenck and Sarah his wife are. The arbitrators recite the names of the parties correctly; that they have deliberately considered the allegations and evidences of the parties of *whom they consider Schenck as one; they award expressly to all the parties, excepting him alone. In the part designed for his benefit they accidentally insert a wrong surname. This is a fair statement of the case; and can any reasonable man say, that, on a candid view of the circumstances, he could entertain a doubt but that the plaintiffs were actually designed ? The Christian name is correct, the name of the wife is correct, and the presumption arising from the recital of the names of the parties, point clearly to a mistake, and to the manner in which it ought to be rectified. Court Voorhees was not present to the arbitrators, and it does not appear that such a man is in existence. Here is a probable presumption or certainty to a common intent.
*467 Again, the paper produced by the plaintiffs was actually read and published by the arbitrators, in the presence of the parties, alter correction, as their award; that in the possession of the defendant never was so read and published. If nothing had transpired with respect to the second, the parties were obliged to perform their part of the first at their peril. It formed a complete execution of the power delegated to the arbitrators, and the object of their appointment being fulfilled, their authority terminated. The delivery, then, to the defendant was a superfluous act, and superfina non nocent is a sound and rational maxim.
If, then, the first paper ivas the award, and that is free from ambiguity, a variance between that and the latter can work no injury, unless it could have cast a doubt upon the real meaning of the arbitrators. The maxim of law is nil facit error nominis si constat de persona. If it is necessary to have recourse to conjecture to remove an ambiguity, Lord Mansfield says, that if certainty may be attained by a fair and reasonable presumption, it may be done; and by this rule, no doubt can remain as to the validity of the award. If the submission be, of all actions real and personal, and the award bo of actions personal only, the award is good^ and it shall be presumed that no actions real were depending between the parties. Kyd 114, (Phil. Kd. 172). If by manifest implication that appear, which, if positively expressed, would render the award good, that is sufficient to support it. Kyd 156, (230). Thus do courts favor awards, and I feel no disposition to swerve from so liberal a course.
In other cases counts assume a control and supply defects in *furtherance of justice, as where, in summoning a jury, Tippet was returned in the venire, and in the habeas corpora and distringas he is named Typper, yet if Tippet be the true name it shall be amended; 3 Lac. Abr. 776: and a distinction is taken between the mistake of a Christian name and the mistake of a surname. The amendment by the court could alone make this good, and surely there are no reasons why we may not go as far in cases of awards.
*468 The case of Green v. Lundy has been pressed upon us. I confess I am unable to see in what manner the principles of it apply. There the arbitrators, after bearing the parties, made two awards, variant in the subject matter; different in settling the courses and distances of a line of property. Both the papers stood on an equal footing as to the publication, and every other circumstance requisite to an award. It was utterly impossible for the court to determine between them ; and if they had clone so, they would have usurped a power delegated to others, a power which the laws never committed to their hands. In that case Lundy was sued for non-performance of an award, which it did not appear, and which we could not therefore presume, was ever notified to him in any other manner than by the bringing of the action. It may further be remarked upon that case, that so essentially different were the two papers that the court could not give effect to one, without wholly rejecting the other; they therefore determined that the dispute was not terminated, and that the award on which the action was founded was not certain and final. The cases are wholly dissimilar, and involve different principles. I am of opinion, that judgment be entered for the plaintiffs.
The other judges concurred.
Judgment for plaintiffs.*

 The general rule on this subject is, that after an award is once made and delivered, no subsequent alteration by the arbitrators can avail. Such alteration, if attempted, will be considered mere surplusage, and will not vitiate the award, which will stand good in its original terms, liven before delivery of the award, if it be in fact made, and notice thereof given to the parties, no change can be effected, Cald. on Arb. 68. 6 East’s Rep. 309. 8 Ibid. 53. Ambler 246. 18 Ves, Rep. 447.